May it please the Court, my name is Howard Scherr and I represent the Secretary of Health and Human Services in this matter. This is a case that involves a post-payment audit of claims submitted by Maximum Comfort on behalf of Medicare beneficiaries for power wheelchairs. I'd like to address essentially three parts to the argument. The documentation requirement, which is the key issue, whether Maximum Comfort is entitled to a waiver of liability under the statute, and last, whether they've actually preserved any other issues if there is a remand by virtue of a single footnote at the end of their brief. As the Court is well aware, the first issue, the documentation issue, has been decided at least by one court of appeals, the Gulf Coast case in the Eleventh Circuit, in which the Court, adopting much the same analysis we presented in this case, held that the provision relied on by the district court in this case did not accomplish what the district court claims it does. The district court here claims that what we call the Certificate of Medical Necessity Provision, Section 1395MJ2B, unequivocally, is the single sole documentation that the Secretary can use in determining whether or not to reimburse a claim for a  wheelchair. And in the Eleventh Circuit decision, the Court said that that provision does not state that the Certificate of Medical Necessity is the single or sole or only documentation. In fact, all it is is a definition that defines what a Certificate of Medical Necessity is for purposes of noting suppliers, the limitations suppliers have in what they can fill out on a Certificate of Medical Necessity. Otherwise, the statute, according to the Eleventh Circuit, adopting our analysis here, clearly and unambiguously provides the Secretary with authority or the discretion to exercise authority to request additional documentation in order to determine whether the physician's certification on a Certificate of Medical Necessity is, in fact, supported by the medical evidence that the physician has. The Court in the Eleventh Circuit held that that was clear and unambiguous, and we submit that it is. The sections dealing with the medical reasonableness and necessity, 1395Y, A1A, 1395FFA, and 1395LE, and other provisions all provide the Secretary with authority to seek other documentation. In fact, under the district court's determination in this case, the only provision the only area of the Medicare statute that the Secretary would be unable to request other documentation in order to determine whether a physician's certification is accurate is in the power wheelchair area. Under the district court's determination, the physician, in fact, would have the final word as to whether or not the power wheelchair ought to be reimbursed. And we think that stands the statute on its head, and that's the position that the Court, in fact, accepted in the Eleventh Circuit decision. Kennedy. I may be jumping ahead to things you're going to address in the future, but it seems to me that one of the things that was motivating the district court from what the district court said was that if more is required, then the supplier really has to ask for that more to protect himself. Would you say that again, Your Honor? Well, if more is required, then the supplier, to be certain, to protect himself from getting stuck with the bill, the supplier has to ask for more himself, doesn't he? I mean, if I'm delivering wheelchairs and I get a certificate of medical necessity, then that may not be enough to protect me if I go ahead and give the wheelchair just on the basis of it. So that means I would have to ask for more, and then I have to become kind of a medical specialist to look at it and decide whether it's really medically necessary, and I'm just a wheelchair builder. You're just a wheelchair builder, but you are the entity that's submitting the claim, and you are the entity that's getting the reimbursement. And through the carrier issuances in this case, you are also informed that because you are the submitter of the claim and the person seeking the reimbursement in these circumstances, you must assure yourself that the physician's records do, in fact, support what the physician certifies. Well, I've got to decide whether that I'm making and selling wheelchairs, and I've got to decide whether the doctor had adequate medical support for the opinion that he wrote into the certificate. Well, you don't have to actually take an assignment. I mean, one of the assignments, which is what, in fact, Maximum Comfort did in this case, is one way of making a claim. The other way to do it, and there's nothing that compels a supplier to make, take an assignment, and take the risk that Maximum Comfort, I'm going to put risk in quotes, take the risk that Maximum Comfort took in this case under the hypothetical that you're posing, Judge Canby. They could have simply had the beneficiary make the application first based on medical records, and then if, in fact, it was approved by Medicare, then there would have been reimbursement. But they chose the assignment issue first, and when they take that assignment route, as the Eleventh Circuit ruled, then, in fact, you have to assure yourself because the statute does provide for postpayment audits. Suppliers are well aware of that. In 1395U of this statute, there are a whole array of auditing provisions, and, in fact, there are those statements about auditing provisions in the carrier issuances, which are in the excerpts of the record from about page 60 to page 80, all of which also indicate that when you take the assignment, that is, the supplier takes an assignment, then you are at risk, again in quotes, of having a postpayment audit declare that the payment was improper because there wasn't evidence of record in the physician's medical records to support the certification. When this audit was done, did some of the instances where there was only a certificate of medical necessity survive the audit? In other words, was reimbursement approved in some cases where there was only a certificate? I'm not aware that there were. There were many cases that the ALJ saw. Remember that this was a sample of claims, et cetera. Right. Two groups of samples. And there were many, many cases, I would say at least 15 to 20, that I counted in the ALJ decisions where, as I understood the ALJ decision, the only evidence in the record was a certificate of medical necessity. And as the Eleventh Circuit says, if the Secretary is barred from obtaining any other documentation, then how does the Secretary protect the Medicare Trust Fund from the dishonest or fraudulent doctor? And that's on the one hand, and that's one of the reasons why the postpayment audits exist. But on the other hand ---- But may I ask you, just as a practical matter, it seems like an odd setup where the certificate is optional as you read the statute, correct? That's correct, Your Honor. And yet what's the purpose of it if it's optional? So if you don't need it at all, what function does it serve then, given its limited information and its limited reliability? The effort was to streamline a process in order to allow prompt reimbursement as an initial matter subject to postpayment audits. So you have the cases we cite, for example, that make that statement are the American Ambulance case out of the Eastern District of Pennsylvania, I think, which goes through a nice analysis relying in part on the Second Circuit's case in the Bodner decision. But the real question in the case is what does ---- because this is where the district court hooks his whole opinion. What does 1395MJ2B mean? And in context, all it is is a definition for purposes of this paragraph, meaning the Certificate of Necessity paragraph. And the purpose of that definition is because in 1994 in which this provision is introduced, Congress was, for the first time after a four-year hiatus, allowing suppliers to fill out a Certificate of Medical Necessity or other form to use in addition to the claim form that's also submitted. And this additional form would also contain the physician's certification, prescription or order. And all Congress was doing in adding 1395J2B to the statute in 1994 was, after a four-year hiatus, saying suppliers can now fill out the Certificate of Medical Necessity, but only, referring back to J2A, only the provisions that deal with the administrative aspects, but not the medical parts. Which is Roman numeral I through IV. Correct. That are listed there. Yes. Which are pretty bare bones. That's right. Because there had been a period of some fear of abuse and fraud in connection with what suppliers had been doing, that in 1990 OBRA, there was a preclusion of allowing suppliers from filling out any Certificate of Medical Necessity because apparently, as I read the legislative history, there were certain suppliers who were, in fact, supplying medical information when they shouldn't have been. So now four years go by and the 1994 amendment comes into place. But what did it do? You would have expected, if Congress was really adopting a substantive provision, it would have done something more than just make this a definitional statement limited to the purposes of this paragraph. It would have said, with respect to durable medical equipment, unlike every other provision, item and service in the Medicare statute, we are going to use the Certificate of Medical Necessity as the documentation for the Secretary can use and no other. You would have expected that kind of language somewhere in the statute, whether it was in one of the auditing provisions or in actually 1395XN, the provision which talks about the fact that durable medical equipment is a covered item in the statute, but nowhere does it say that. And as the Eleventh Circuit said, citing the McKenzie decision out of Maryland, which is on appeal, but citing it with approval, it's an odd thing for Congress to have taken a definition and tried to make it into a substantive provision. And in fact, the Eleventh Circuit, agreeing with our analysis, says that's not the case, that all the other documentation provisions or statutory provisions that enable the Secretary to engage in postpayment audits and so forth are not clearly and unambiguously precluded or preempted by this 1395J2B provision. In fact, the Court says, clearly and unambiguously, the rest of these provisions allow the Secretary to seek this other documentation. So that says you've mentioned the audits and we're in a situation where there was audit language that is applicable here, and then there's an amendment. Is that correct? There was a 2003 amendment to the statute. Right. And the Secretary, and that amendment required physicians to have a face-to-face meeting with doctor or with their patients that are going to get power wheelchairs. I think it's within 30 days prior to the ordering of a power wheelchair. But if it's not, if that part isn't in the statute, it definitely is in the new regulation 410.38, which the Secretary issued pursuant to the 2003 amendments. And this is something else that's fairly interesting as well. Under the district court's analysis, the statute, according to the district court, clearly states that the Secretary can only request a certificate of medical necessity. The Secretary has now moved through the 410.38 regulation to a process for power wheelchairs alone where the Secretary requires the following. And the brief summary of this is the supplier files the prescription for the power wheelchair that the physician has supplied with its CMS 1500 claim. The physician sends both the prescription and all the relevant files to the supplier first. Then the end, together with that, the physician, before it issues the prescription, must have a face-to-face with the beneficiary within 30 days of the prescription. And OMB okayed all of that paperwork requirement. Under the district court's analysis, the Secretary can't do away with a certificate of medical necessity in the statute. This would be something that the Congress would have to do. Well, it's just, I'm sorry, I may be not understanding, but at what point did the and you may have already covered this, but at what point did this appellant know that it was supposed to have more information? All along. The carrier issuance is, first of all, there's the statute, which we think is clear. And I guess one question is, how clear does the statute have to be before it's clear? But it seems to me, according to the Eleventh Circuit, the statute is clear. Second, there are the carrier issuances, which are in the excerpt of the record from 60, pages 60 to 80. Well, no, but wait a minute. The statute says that there may be other, that they have to do what is reasonable and necessary. It may not be limited, but at what point? It doesn't define exactly what has to be put in, does it? No. The statute clearly has always given the Secretary post-payment audit authority. So that's, I guess that, I guess this is related to the concern of Judge Canby. If they didn't know until after they were audited that they should have had put in more information. Oh, I'm sorry. That's what I'm, no, no, no. Oh, if that's what Judge Canby had asked, and I'm sorry, I may have misunderstood it. I'm asking anyway. The carrier issuances, which were issued in December of 93, March of 95, and again in 97 for sure, and those are the ones in the excerpt of record at pages 60 to 80, those issuances made all this clear as far as we're concerned. And we cite to the particulars in those particular provisions. For example, page, in the, what's called the DMIRC dialogue, excerpt of record of 79, supporting documentation will be requested and reviewed from selected suppliers by the CMN validation auditors. But those are general statements, I think. Those are, they're statements about what, about the fact that the certificate of medical necessity is not the only documentation. Also in there, for example. I guess I'm just not understanding how the, this wheelchair maker is supposed to know what, if anything, it needs beyond that until after it's too late because it's being audited. The, well, he knows what the coverage criteria are, namely that the individual must be bed or wheelchair or chair bound, that's one of the criteria, or totally non-ambulatory, upper extremity weakness in the body, and be able to have to get, use the wheelchair in the home, for one thing, and not be able to get around with a manual wheelchair. These criteria are well known to the, and they're page 88. What does the certificate of medical necessity say? Well, there's one at page 665, but also at the excerpt of records submitted by, in the supplemental excerpt of records. You have, sorry, it's a checklist. And the doctor's checklist is very brief. And it's just seven questions. Doctor checks those questions, and that's all he's certifying to. He's certifying, we hope, that he has the records to support that evidence. But from the certificate of medical necessity. That's a form? It's a form. It's the supplemental excerpts of record, page 1. And it's put out by? It's one that's produced by, it was uniformly produced by CMS, but the carriers distribute them, or rather the carriers provide them, I think, to suppliers, and suppliers may use them. I take it when the manufacturer submits the certificate of medical necessity, that's enough to trigger the payment subject to later audit. Is that correct? That's correct. Otherwise, if there were a requirement to submit all the records up front, it would take months just to? That's a pre-audit, essentially. Exactly. But you're just basically saying there needs to be, you submit it, the form itself doesn't declare suitability, but you have to have, there have to be backup records in the event of an audit. And that's what the 11th Circuit pointed out. It's just a prepayment tool that enables prompt reimbursement subject to follow-up audits if there are going to be some. The, at best. Researchers? Is that a rough? It's an excellent example, and an analogy I would have drawn also. That you get your reimbursement or refund under the tax code by submitting the 1040, but subject to auditing. And in this case, let me point out also, at page 76, medical documentation that the supplier must obtain in the first instance is the CMN. However, in the event of audit, documentation beyond the CMN would be required from the supplier. I suppose that the recent regulations you were reading, or directives by the secretary, is aimed at the problem we have here. Namely, that most of the doctors just wouldn't respond and give additional information. So the suppliers were stuck. They didn't have, they couldn't get it. I just didn't hear the last part. Well, if they didn't have it. If they didn't have, most of the doctors just wouldn't answer the mail or something. Right. And then the question would be. So I gather the new regulation is aimed at making the doctors deliver their records before the wheelchair is delivered. That's correct. Because of what was perceived abuse in the process of using the CMN. And this way, I think my time is up. In this way, the secretary hit it off, which was the problem, as we pointed out in our briefs, that there was a sudden growth in the ordering of power wheelchairs from about 1997 right on. So does that mean this case is never going to come up again? Well, I don't know if there is a percolating case in. Well, I mean, but there could be another case in the system. Yes. But as of day one, one won't be, won't accrue because as of now. As of starting for, I would imagine, August of 2006. I think it is when. But there is an amount of money here that for maximum comfort is at risk. Yes. A significant amount of money at risk for maximum comfort. Okay. Thank you. The abuse is done. Thank you, Chief Judge Schroeder. May it please the Court. I'm David Frederick representing Maximum Comfort. And I want to start with your question, Chief Judge Schroeder, because this is not like a tax return. This is a form that the supplier received after a very long administrative process where the secretary consulted with every major medical group over a multiyear period to determine which questions the doctor should answer so that when the doctor answered yes or no, the doctor could then certify under pain of perjury that the patient had a medically necessary reason to get the power device. In our supplemental excerpts of record at page one, we set out the form so that you can see which questions the doctor has to answer. Now, in enacting the 1994 amendments, Congress made it clear that it did not want the supplier attempting to make any medical judgments at all. The purpose of those 94 amendments was to put the onus of making medical judgments on the doctor and leaving to the supplier the business of procuring the device, making sure that it was at the right code administratively, that it was at the right price, that the secretary had approved. But all of the medical decisions were to be made by the doctor. And so this form, which took two years to develop, has very particularized questions. And if the doctor answers those questions affirmatively and then signs Part D of the form, which attests that the doctor is signing under penalty of perjury, the supplier is then able to take that form and submit it to get reimbursement. The purpose of this scheme is to alleviate the pressure on the supplier to try to second-guess the judgments of the doctor so that the doctor can do what the doctor is supposed to do, which is to look at the patient and say, can the patient survive without having this device and is that something that the patient absolutely has to have? The supplier isn't part of that decision-making process at all. But the whole idea behind the 94 Act was to bifurcate the responsibilities between the supplier and the doctor. And the supplier... How does that square then? You know, everything you describe makes perfect sense, but it doesn't answer the ultimate question, which is the language of the statute. Where in the language of the statute do you then divine the notion that this is the exclusive means? Let me address that. We've set out in the red brief at our addendum, pages 8 to 9, the specific statutory language. It's at 42 U.S.C. 1395 M.J. 2A and B. A provides, and this is at addendum 9, effective 60 days after October 31, 1994, a supplier of medical equipment and supplies may distribute to physicians or to individuals entitled... Let's just stop there. May do it, yes. May. And let me address the voluntary disposition. Prior to 1994, there was a panoply of confusing forms and means by which suppliers would attempt to submit information to get reimbursement. And what Congress was attempting to do here was to simplify the process. But it wasn't going to engage in a completely radical overhaul, because some suppliers said it's easier for us, because of the relationships we have with doctors, hospitals, et cetera, to provide the old form of information. So Congress said, okay, we're going to make it voluntary, but we're going to give the supplier the discretion to use this CMN form. And as Senator Cohen explained in the legislative debates, we encourage the suppliers to use this. And, in fact, the DMR carrier issuances that Mr. Schur referenced all say we want the supplier to use the CMN form. So far, so good. The supplier, if it uses the CMN, can only fill out certain administrative information. It can't fill out the medical information. The doctor has to do that. But then, in defining what the CMN provides, and this is further down at the definition section, Congress specifically provided that for purposes of this paragraph, the term certificate of medical necessity, means a form or other document containing information required by the carrier for purposes of getting reimbursement. The carrier is the secretary's designee. So the secretary, in sitting down to decide what are the questions that we're going to ask on the CMN, how are we going to make this form completely useful so that we're not tied up for years in litigation and post-reimbursement audits? How can we best ensure that the patient gets the device, the supplier gets reimbursed? We are going to decide what the questions are. And they spent two years doing that process before the secretary submitted to the Office of Management and Budget, this is the form, and here are all of the different medical groups we consulted to come up with these seven questions. And if the doctor answers these seven questions and then swears to the truth of that statement, we're going to make that sufficient for the supplier to get reimbursement. That's not exactly what it says. No, but that's how the process works. No, no, but you see, my difficulty is this, is that if we were to take your view at face value, then what good would the audit process be? Let me explain that. The audit process has to ensure that the supplier has the original of the CMN. And the original is the original signed statement by the doctor and that the audit would ensure that the administrative parts of the CMN form have been properly adhered to by the supplier. That's what the statute says the supplier is responsible for. Is this the right product code? Is it the right price? Has it been done according to the administrative elements that the secretary mandates and Congress mandated the supplier to fill out? But it's absurd to think that the supplier, who's not a doctor, he's a businessman. He buys these power wheelchairs. He markets them. He sells them. He helps to provide the administrative information. But he doesn't have access to the very private medical records that the patient has provided to the doctor and that the doctor has filled out. So you would say the tax analogy is all wrong because the taxpayer is the one who generates the income and the information that the IRS wants to see, whereas you're just the middle person who has only what the physician has. Exactly. The audit of the tax return in this circumstance, Chief Judge Schroeder, would be the doctor. If you want to audit the doctor to determine, doctor, did you have a medical basis for signing this CMN under pain of perjury, go look at the doctor's records. But wouldn't a better analogy be the normal government contractor situation where you have these various pass-through people? So if I buy my steel, I need a certification from the steel manufacturer that it meets, you know, various AMSI government standards. I then just fill out, if I'm the government contractor, check, I got that. But the government has the right to come back and put on the government contractor, or in this case the supplier, to be able to provide that information to make sure the check is correct. And that's where the original signed CMN comes in. Right. But isn't the government entitled not to just say, is there a checkmark and did somebody sign, which is almost a superfluous audit? What is the underlying documentation for the checkmark? Isn't that what we're really getting to? But the whole point is second-guessing the medical judgments of the doctor. If you're a supplier and you're in business, and I would like to point out that my client was put into bankruptcy because of this very practice by the Medicare agency to take back what had been promised. There was no question of medical necessity. There was no question of the proper price. There was no question that the doctor had signed the CMN. It was simply because doctors failed to respond when the government audited. And my clients left holding the bag for what the doctor failed to provide. And how is the situation going to change as of now? Well, Chief Judge Schroeder, your question I think was partly answered, but not perfectly so. This case is brought to this court to be a test case. And the government brought this case here because it wanted to establish the principle that it can engage in arbitrary audits and put the supplier on the hook when the supplier doesn't have backup medical information. Now, because the process took its time winding its way up to this court, the secretary decided we can't wait, we're just going to launch ahead. So they launched ahead, engaged in a legislative modification, regulatory changes. So now as a test case, the only test guinea pig here is my client, which is left holding the bag, and for prospective reasons, this case probably doesn't have the significance that the government thought three years ago when it decided to appeal Judge Carter's decision. So you agree that beginning as of 2006 that this situation is not going to happen? The process has changed in significant ways, and those industry suppliers that have not been put into bankruptcy as a result of claims in the pipeline that have been disallowed and claimed against under the old system are having to come up with medical information. They're having to hire doctors. They're having to get other relationships with doctors so that they can try to verify after the fact in ways that Congress, we submit, didn't intend when it enacted the 1994 Act. So there's a claim in bankruptcy against your client on this? Well... The client has emerged from bankruptcy but is no longer doing Medicare reimbursements, is simply doing Medi-Cal reimbursements at this time. And the other cases that the government cites, the McKenzie case and the Gulf Coast medical case, those clients are out of business. They're in bankruptcy because their only asset is the claims that they have in litigation for trying to reclaw back the amount of money that the government took from them after claiming they didn't have sufficient documentation. So what we have here is a situation where the definition says it's information required by the carrier. They get to decide whatever that information is. They can write the CMN however they want. They can put whatever questions on that form they want. They just have to get the doctor to certify to the answers to those questions. But if the doctor does that, it's not appropriate, it is not what Congress intended to put the supplier on the hook for the doctor's failure to provide the supplementary documentation. Now, I do want to address the second point that we've made in our briefs, which we don't think that the government has addressed, which is the waiver provision. With only about a page in its reply brief the government addressed this. But at 1395pp, Congress provided that if there was a reasonable basis for the supplier to think that it would be entitled to reimbursement and something happens that would cause there to be a change in that, the supplier shouldn't be on the hook for determining its failure to get reimbursement. It should be entitled to it. We submit this is the perfect and classic case for application of that waiver provision. The government cites to parts of the carrier's guidance, but one part that they cite to was revised in December of 1993. This is in the excerpts of record at pages 73 to 77. That was before the 1994 Act. It was before the two-year process that the Secretary engaged in to come up with a CMN. The documentation may be requested on a sample basis. Yes. And so what happened is they're citing to guidance that predated the important statutory and regulatory changes that were subject to my client. Then they are suggesting that the supplementary documentation that was by virtue of guidance issued after the claim submitted in this case should nonetheless have a retroactive appeal. We've noted that in a footnote in our brief. I think it's footnote 25. But the bottom line here is that my client, which has done nothing wrong except perhaps be unable to persuade the doctors who prescribe these devices for their patients to cough up the relevant documentation to support their claims. That's it. And that isn't a sufficient basis under this statute to deny them the reimbursement that they are due. Let me ask you on, in terms of the notice and waiver issue, you cited, I think, up to page 77. The government relies on Excerpt of Record 79, which is another page in the manual that has to do with supporting documentation. Is that the page that you're saying was added after this dispute, or is that a page that was in effect during the dispute? Neither. Okay. It was enacted, this page was issued in July of 1995. The CNN that my client had the doctors fill out and used as evidence was finalized in 96. And the guidance we would submit is inconsistent with the implementation of the 94 statute in light of that revised and perfected CNN, which was... Okay. So let me just stop right there. That really, though, okay. Just trying to get the timing straight. Your answer now really relies on us adopting your first argument as to the scope of the certificate of medical necessity. No, it's too... May I finish? Sure. Thank you. What you're saying, though, is that the ER-79, whatever we may or may not make of it, that was on the table and in existence before this certificate was issued, correct? It was. And what I think, you know, we have multiple arguments for this, Judge McKeown. For one thing, these are not entitled to any kind of deference. These are not issued by notice-and-comment rulemaking. They are simply a private insurer's guidance to what it thinks is sufficient in order to justify post-audit. And this Court has held that those kinds of guidances are not entitled to any kind of deference. So to the extent that you find it relevant at all, it is simply in terms of what information the supplier may have tried to take into account. And I would submit that if you read through this whole thing, they point in opposite directions, and they point in opposite directions because they're reflective of the old regime. If they aren't entitled to deference, is there any basis for them to serve as notice, if not a deferential interpretation? I think that not for purposes of establishing the waiver provision. I think the waiver provision is entitled to, is intended to protect suppliers who are making a good-faith effort to comply with the rules and the statute as they are mandatorily imposed on the supplier. Did this case go to mediation in the Ninth Circuit? It did. Well, it was rejected because the government basically said this is a test case that the Secretary wants to bring. But circumstances have now changed on the testing part of it anyway, correct? I won't speak for the government. From your perspective? From our perspective, this case is about the money that's being held up. That's all that's left is the money. From our perspective, that's correct. Okay. Thank you. The case just argued is... Did you want to say something? Oh, you've got a minute? I thought he seized his time. Okay. May I have a few moments? We'll give you a minute. I would point to ER 79. Supporting documentation will be requested and reviewed from selected suppliers by CMN validation auditors. That's 1995. Also, in 1997, on Executive Record 6162, some suppliers have questioned DMERC's authority to hold a supplier responsible for verifying information from the physician. But that's after this was submitted. This was 1997, so... This was 1996, the relevant date, correct? No, the audits in this case were for 19... from January 1, 1998. The certificate was submitted in... We're talking about the certificates in 96? No, the certificates are from January 1, 1998, through January 14 or so, 99. I point out that the CMN needed to be uniform because if there wasn't a uniform submission, then these things are also done electronically and most of these claim forms were submitted electronically. You would have a myriad potential for carriers to have to sift through. So the idea was to at least have a... Can I just ask one question? If... Due to the changes in the audit and the changes in the legislation, is this... is the test case aspect of this kind of... been overtaken by events and that we're left now with a monetary reimbursement dispute between the government and maximum cost? I actually thought the court was not supposed to know this case is in mediation and... No, I didn't ask if it was in mediation. I asked if it had gone through the mediation process and the answer was no. So my question now is, is the money the only thing that's in dispute here or will the decision... will affect the other cases in the pipeline? If you affirm the district court, then I think what the Secretary did by regulation will be overturned because the district court's ruling is the statute is clear that the CMN is the only documentation and that while you can pile on on the CMN, it has to be done through the CMN according to the... Okay, but... Let me just ask a modification. There are other cases perhaps in the pipeline that would be in a similar situation?  Could be. Okay, thank you. Thank you. The case just argued is submitted for decision. We'll hear the last case for argument, District Council Number 16, Carpenters v. B&B Glass.
judges: Schroeder, Canby, McKeown